UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JAMES RAPINOE, Booking #20944774 <br><br> Plaintiff, <br><br> vs. <br><br> BILL GORE, Sheriff, DR. MONTGOMERY, VISTA DETENTION FACILITY DOCTORS, GEORGE BAILEY DETENTION FACILITY DOCTORS <br><br> Defendants. | Case No.:  21-CV-1779 TWR (WVG) <br><br> **ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, (2) DISMISSING ACTION FOR FAILING TO STATE A CLAIM UNDER 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b), AND (3) DENYING WITHOUT PREJUDICE MOTION FOR APPOINTMENT OF COUNSEL** <br><br> (ECF Nos. 2, 3) |

Plaintiff Brian James Rapinoe, an inmate currently detained at George Bailey Detention Facility ("GBDF"), located in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  (*See generally* ECF No. 1 ("Compl.").)  He has also filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) ("IFP Mot.," ECF No. 2) and a Motion for Appointment of Counsel ("Motion for Counsel," ECF No. 3).

**MOTION TO PROCEED *IN FORMA PAUPERIS***

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  The Prison Litigation Reform Act's ("PLRA") amendments to § 1915, however, require that all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. §§ 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).  In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. §§ 1915(b)(1), (4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2021)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Rapinoe has submitted a copy of his Inmate Trust Account Statement as well as a Prison Certificate completed by an accounting officer at GPDF.  (*See* IFP Mot. at 5–7; *see also* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119.)  These statements show Plaintiff maintained an average monthly balance of $0.47 and had $41.99 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint.  His available balance as of October 12, 2021, was $0.00.  (*See* IFP Mot. at 5.)  Therefore, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2); declines to exact any initial filing fee because his prison certificates indicate he may have "no means to pay it," *Bruce*, 577 U.S. at 84; and directs the Watch Commander at George Bailey Detention Facility, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## INITIAL SCREENING PER 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)

Because Rapinoe is a detainee and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

### I.   Legal Standard

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

/ / /

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

In deciding whether to dismiss the complaint for failing to state a claim, the court is generally bound by the facts and allegations contained within the four corners of the complaint. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007). But, if the plaintiff has supplemented the complaint by attaching documents, the court may consider these documents as part of the complaint when determining whether the plaintiff can prove the allegations asserted in the complaint. *During v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, while a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe*

*v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

## II   Plaintiff's Allegations

In his Complaint, Rapinoe alleges "medical staff at George Bailey Detention Facility, San Diego Central Jail and Vista Detention Facility have engaged in a systematic denial of medical care." (*See* Compl. at 3.)  Rapinoe contends that in 2017, while he was a detainee in the custody of the San Diego County Sheriff's Department ("SDSD"), Defendant Sheriff Bill Gore "enacted policies and procedures concerning how and what a doctor contracted by the County, working as a primary care physical for the facilities Sheriff Gore oversees, may treat." (*See id.*)  Rapinoe alleges Defendant Montgomery, as the Chief Medical Officer, was tasked with "ensur[ing] the polices were put into practice . . . in 2017." (*See id.*)  Rapinoe asserts that under the policies enacted in 2017, "all treatment for any illness that [is] not literally life or death were and still are treated as elective in nature." (*See id.*)

Rapinoe contends that due to these policies, medical staff for the SDSD were deliberately indifferent to his serious medical needs related to a knee injury which required surgery.  Specifically, Rapinoe alleges that in early 2017, while out of custody, he suffered a "sudden knee dislocation." (*See id.* at 4.)  Rapinoe was being treated for an "inflamed and deteriorating ACL and meniscal tear" at a San Diego clinic prior to entering San Diego jail. (*See id.*)  He had been prescribed a variety of pain medications, including Percocet and Gabapentin[2] and was "scheduled for surgery;" but he was returned to SDSD custody

---

[2] The Court takes judicial notice of the fact that Gabapentin is used for "Neuropathic Pain and Peripheral Neuropathy," among other things.  *See* Physician's Desk Reference, https://www.pdr. net/drug-summary/Neurontin-gabapentin-2477.4218 (visited Nov. 29, 2021).  Percocet is a "combination product to treat moderate to severe pain," containing acetaminophen and

on February 22, 2017, before the surgery could take place. (*See id.*)  Rapinoe alleges that after entering SDSD custody, he was "denied treatment at every level." (*See id.* at 5.)  Prior to the 2017 policy changes, Rapinoe states that he had received Norco[3] and Gabapentin when in SDSD custody, which helped with his knee pain but he is now being denied pain medication under the "new" SDSD policy. (*See id.*)

Rapinoe alleges SDSD medical staff failed to treat his knee while he was in their custody in 2017, and as a result, when he was ultimately transferred to California Department of Corrections and Rehabilitation ("CDCR") custody, he "reinjured his knee." (*See id.*)  He claims the reinjury was due to the lack of treatment he received while SDSD custody. (*See id.*)  While in CDCR custody, Rapinoe's knee was evaluated and he was scheduled for surgery by doctors at Pelican Bay State Prison. (*See id.*)  But Rapinoe was paroled in August 2019, before the surgery could take place. (*See id.* at 6.)  While out of custody, he was seen by a doctor at a medical clinic who told him that without surgery he would continue to be in "major pain and further damage [his] knee that was already damaged." (*See id.*)  He was returned to SDSD custody in 2020 and alleges that he had a "single (tele-med) ortho appointment," after which he was denied any treatment for his injury, including surgery, pain medication, a cortisone shot, soft soled shoes, and/or physical therapy. (*See id.* at 7.)

Plaintiff also alleges that under the policies enacted by Gore, he has been denied treatment for his opioid addiction which amounts to a violation of his right to adequate

---

oxycodone.  *See id.* at https://www.pdr.net/drug-summary/Percocet-acetaminophen-oxycodone-2483.1051; *see also United States v. Howard*, 381 F.3d 873, 880 & n.7 (9th Cir. 2004) (taking judicial notice of the narcotic effects of certain medications listed in the Physician's Desk Reference); *see also Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) ("Well-known medical facts are the types of matters of which judicial notice may be taken.").

[3] The Court takes judicial notice that "Norco" is a "combination product to treat moderate to severe pain," containing acetaminophen and hydrocodone, "a semisynthetic opiate."  *See* Physician's Desk Reference, https://www.pdr.net/drug-summary/Norco-acetaminophen-hydrocodone-bitartrate-24010 (visited Nov. 29, 2021).

medical care.  (*See id.* at 9–10.)  Rapinoe asserts that he has repeatedly requested Medically Assisted Treatment ("MAT") for his "dual diagnosis [of] addiction [and] mental health problems."  (*See id.* at 10.)  In addition to being denied treatment, the SDSD offers "no other alternatives" to inmates with drug addiction.  (*See id.*)  Rapinoe further contends his addiction and mental health issues amount to a disability and depriving him admission to a MAT program amounts to denial of a serious medical need "with no rational basis."  (*See id.*)  He claims other detainees at in SDSD custody are provided MAT services but "the process by which inclusion is granted is unknown."  (*See id.* at 9.)

Last, Rapinoe alleges that while detained at Vista Detention Facility ("VDF"), he received inadequate dental care after he lost a tooth filling in early 2020.  (*See id.* at 13.)  On February 19, 2020, Rapinoe submitted a grievance complaining that he had waited over two weeks to see a dentist and he "had not heard from dental. . . or the charge nurse."  (*See id.*)  He was finally seen by a dentist in mid-March 2020, "around 3 weeks" after he filed his grievance.  (*See id.*)  X-rays showed that his filling had fallen out and that "a simple procedure requiring a [new filling] should fix said tooth in no time."  (*See id.*)  He waited to be scheduled for an appointment to re-fill the tooth.  (*See id.*)  In June 2020, when he had still not been treated, Rapinoe filed another grievance about the delay.  (*See id.*)  By that time, Rapinoe alleges, the tooth "pain got bad" and he was having trouble eating and sleeping.  (*See id.*)  Plaintiff finally received treatment on September 1, 2020, when a dentist filled the tooth.  (*See id.*)  But by that time, a "cavity had set in" and the dentist told Rapinoe he was not sure if it would "become infected."  (*See id.* at 12.)  Plaintiff states that two weeks after getting the filling he was "back in excruciating pain."  (*See id.*)  He was told by the dentist that his tooth was infected and "will have to come out [because] we don't do root canals."[4]  (*See id.*)  Plaintiff contends that the failure to "extract, fill or perform dental work on [his] infected tooth for over 7 months amounted to deliberate

---

[4] It is unclear, what, if any, follow-up treatment Plaintiff received for his infected tooth.

indifference" to his serious medical needs and was based on policies put in place by Gore and executed by Montgomery.  (*See id.* at 13.)

## III.   Analysis

Section 1983 of chapter 42 of the United States Code is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under section 1983, Rapinoe must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

Rapinoe raises three claims: (1) he received inadequate medical and dental care because of policies put in place by officials of the SDSD, in violation of his due process rights; (2) the failure to admit him to the Medication-Assisted Treatment ("MAT") program for treatment of his opioid addiction is a violation of his Equal Protection rights; and (3) his rights under the Rehabilitation Act.  (*See generally,* Compl.)

### A.   *Failure to Provide Adequate Medical Care and* Monell

In his Complaint, Rapinoe names as defendants, San Diego Sheriff Bill Gore,[5] Bill Montgomery, Chief Medical Officer, and "All Doctors" at George Bailey Detention Facility ("GBDF") and Vista Detention Facility ("VDF").  (*See* Compl. at 2.)  Rapinoe claims he received inadequate medical care while housed in the custody of the SDSD as a pre-trial detainee, in violation of his "right to medical care, due process and freedom from cruel and unusual punishment."  (*See id.* at 3–5.)  He further contends Defendants put in place and executed policies at the San Diego County jails that deprived him of adequate medical care. (*See id.* at 3.)  Specifically, Rapinoe alleges Defendants were deliberately

---

[5] Gore retired as San Diego Sheriff on February 3, 2022.  *See* Press Release, *Sheriff Bill Gore Announces Retirement*, https://www.sdsheriff.gov/Home/Components/News/News/901/ 514? npage=3 (visited Feb. 28, 2022).

indifferent to his serious medical needs when they deprived him of medical care for a knee injury, denied him participation in a MAT program for detainees with a history of opioid drug addiction, and denied him adequate dental care.  (*See id.* at 3, 8, 12.)

Rapinoe indicates on his form Complaint that he seeks to sue each party in the "official capacity," (*see id.* at 2); however, he seeks both monetary damages and injunctive relief.  (*See id.* at 2, 15.)  As such, the Court will address both individual and official liabilities.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity."); *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999).

### 1.   *Individual Capacity – Respondeat Superior*

To the extent Plaintiff seeks to sue Defendants Gore and Montgomery in their individual capacities, he fails to state a claim.  There is no vicarious liability under § 1983.  In other words, an individual defendant is not one is responsible for the actions or omissions of another.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir. 1984).  "Because vicarious liability is inapplicable to . . . § 1983 suits," Rapinoe "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Here, Rapinoe includes no specific factual allegations describing any individual acts or omissions taken by Gore and/or Montgomery related to the treatment, or lack thereof, of Rapinoe's knee injury in 2017 or 2020, his dental care, or the denial of admission to the MAT program.  Plaintiff's broad and generalized allegations fail to show how, or to what extent, the Sheriff or Chief Medical Officer may be held individually liable for any constitutional injury.  *See id.* at 676–77; *Jones v. Cmty. Redev. Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (stating that even a pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a claim).

/ / /

Therefore, Rapinoe fails to state a claim against Gore and/or Montgomery in their individual capacities.  *See Taylor*, 880 F.2d at 1045.

        2.      *Official Capacity* – Monell

      With respect to claims against Gore and Montgomery in their official capacities, the Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "Official capacity suits [under § 1983] . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id.* at 165–66 (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 & n.55 (1978)); *see also Brandon v. Holt*, 469 U.S. 464, 472 (1985) (concluding actions of department head in his official capacity are akin to actions of municipality itself).  Thus, to the extent Rapinoe is attempting to sue Gore and Montgomery their official capacities as Sheriff and Chief Medical Officer, it is treated as a suit against the County of San Diego.  *See Kentucky*, 473 U.S. at 166.

      A local municipality can be held liable under § 1983 if the allegedly unconstitutional actions of its employees are alleged to have been taken pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *See Monell*, 436 U.S. at 690.  To state a municipal liability claim under § 1983, Rapinoe must allege both a deprivation of a constitutional right and a departmental policy, custom, or practice that was the "moving force" behind the constitutional violation.  *See Graham*, 473 U.S. at 166; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (en banc).  Specifically, Plaintiff must allege "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the [County] had a policy; (3) that the policy amounts to deliberate indifference to [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

/ / /

A plaintiff can show the existence of an entity's policy in one of three ways. *See Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, an entity may be held liable when it acts "pursuant to an expressly adopted policy." *See id.* (citing *Monell*, 436 U.S. at 694). Second, an entity may be held liable for a "longstanding practice or custom." *See id.* Such circumstances may arise when, for instance, the entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)). Third, an entity may be held liable when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *See Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See Collins v. Cty. of Harker Heights*, 503 U.S. 115, 123 (1992). "[P]roof of a single incident of unconstitutional activity," or even a series of "isolated or sporadic incidents," will not give rise to liability under § 1983. *See Gant v. Cty. of L.A.,* 772 F.3d 608, 618 (9th Cir. 2014) (citation omitted). Rather, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). As such, Rapinoe must allege facts to show that a constitutional deprivation[6] was caused by the implementation or execution of "a policy statement,

---

[6] Rapinoe alleges his constitutional right to due process was violated when he received inadequate medical and dental care as a pretrial detainee. (*See generally* Compl.) A plaintiff demonstrates "deliberate indifference" under the Due Process Clause by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). The defendant's conduct "must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *See id.* (quoting *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). A defendant's "mere lack of due care" is insufficient to state a Fourteenth Amendment claim. *See Gordon* v, 888 F.3d at 1125. Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *See id.*

ordinance, regulation, or decision officially adopted and promulgated" by the municipality, or a "final decision maker" for the municipality.  *See Monell*, 436 U.S. at 690; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local government under § 1983 the plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury); *Garmon v. Cty. of L.A.*, 828 F.3d 837, 845 (9th Cir. 2016).

Here, Rapinoe alleges Sheriff Gore is responsible for policy changes made in 2017, which led to Rapinoe purportedly receiving inadequate medical care for his knee while in SDSD custody in 2017 and 2020; inadequate dental care in 2020; and no necessary drug treatment in 2020.  (*See* Compl. at 5, 9, 12.)  He further contends that, as Chief Medical Officer, Montgomery was responsible for implementing these policies.  (*See id.* at 5.) Rapinoe alleges Gore "enacted policies and procedures" in 2017, concerning "how and what" a doctor who contracts with the SDSD may treat detainees.  (*See id.* at 3.)  Rapinoe states that under the policy purportedly enacted by Gore and implemented by Montgomery, "all treatment for any illness that was not literally life or death were and still are treated as elective in nature."  (*See id.*)  He contends that as a result of this "policy" he was denied adequate medical and dental care.  (*See id.*)

Rapinoe must do more than allege Defendants "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs," such as inadequate medical care, alleged elsewhere in his Complaint.  *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (*i.e.*, inadequate medical care) is insufficient.  *See id*.  For an unwritten policy or custom to form the basis of a *Monell* claim, it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice.  *See Monell*, 436 U.S. at 691.  In pleading such a claim, the complaint must "put forth additional facts regarding the specific nature of [the] alleged policy, custom, or practice."  *See AE*, 666 F.3d at 637.  Here, Rapinoe alleges merely that "all treatment for any illness that [is] not

literally life or death were and . . . are treated as elective in nature." (*See* Compl. at 3.) Plaintiff's vague allegations fall short of pleading a viable *Monell*. *See Iqbal*, 556 U.S. at 678; *AE*, 666 F.3d at 636–37 (applying *Iqbal* pleading standards to *Monell* claims).

Furthermore, Rapinoe has not adequately alleged specific facts demonstrating that his alleged constitutional deprivation was the result of a custom or practice of the County of San Diego. *See Dougherty*, 654 F.3d at 900–01. To plead a sufficient *Monell* claim, a plaintiff must show that the government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *See Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694–95); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff . . . must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) ("To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation."). "This inquiry has been described as a difficult one." *See Koistra v. Cty. of San Diego*, 310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) (citing *City of Canton*, 489 U.S. at 385–86).

Here, Rapinoe has failed to allege sufficient facts to allege "a 'direct causal link' between a policy or custom and the alleged constitutional violation." *See Anakin v. Contra Costa Reg'l Med. Ctr.*, No. 16-cv-00161-MEJ, 2016 WL 1059428, at *3 (N.D. Cal. Mar. 17, 2016) ("Plaintiff has not identified or alleged a policy, practice or custom that may have caused a deprivation of his rights, and he fails to allege that such practice was the 'moving force' behind his alleged injury." (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 404)); *see also Dougherty*, 654 F.3d at 900–01 ("The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation.") Therefore, Plaintiff has failed sufficiently to allege causation as required for a *Monell* claim.

/ / /

Based on the foregoing, the Court finds Plaintiff has failed to state a *Monell* claim against Gore and/or Montgomery in their official capacities.

### 3.  Doctors at VDF and GBDF

Rapinoe contends that his Due Process and Eighth Amendment rights were violated by "Doctors at Vista Detention Facility" and "Doctors at George Bailey Detention Facility." (*See* Compl. at 2.)  It appears Rapinoe is attempting to allege that unnamed doctors at GBDF and VDF failed to provide adequate medical care and dental care. (*See generally id.* at 3–8.)

To the extent Plaintiff seeks damages against these unnamed defendants in their official capacities, the claims must be dismissed.  As discussed above, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, defendants are entitled to immunity from suit for monetary damages in his or her official capacity under the Eleventh Amendment.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 53–54 (1996).

To the extent Plaintiff seeks to sue the unnamed doctors at GBDF and VDF in their individual capacities for deliberate indifference to his serious medical needs, he also fails to state a claim.   Generally, actions against "unknown" defendants are disfavored. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).  A plaintiff may, however, sue unnamed defendants when the identity of the alleged defendants is not known prior to the filing of the complaint.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980). When suing unnamed defendants, the plaintiff must still allege that each one had personal involvement in the civil rights violations or that their action or inaction caused the harm suffered.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Montoya ex rel. S.M. v. Española Pub. Sch. Dist. Bd. of Educ.*, No. 10-cv-0651, 2012 WL 13070109, at *3 (D.N.M. Dec. 6, 2012) ("[L]iability must be premised on these individuals' own conduct which allegedly violates Plaintiff's federal constitutional rights.").

/ / /

1    Here, Plaintiff names "Doctors at GBDF" and "Doctors at VDF," but he fails to
2  describe with particularity how any individual doctors participated in the alleged
3  constitutional violations.  Plaintiff's allegations are therefore insufficient to establish any
4  liability against individual doctors at either facility. [7]  For these reasons, Plaintiff has failed
5  to state a claim against the "Doctors of GBDF" and "Doctors of VDF."

6         ## B.     Equal Protection Claim

7         In addition to alleging a violation of his due process rights, Rapinoe argues the SDSD
8  denied him admission to the MAT program for treatment of his drug addiction while other
9  similarly situated detainees were admitted, with "no rational basis."  (*See* Compl. at 9–11.)
10  The Court liberally construes this allegation as an equal protection claim.  *See Balistreri v.*
11  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (stating pro se pleadings must be
12  liberally construed).

13         The Equal Protection Clause requires that persons who are similarly situated be
14  treated alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985);
15  *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be
16  established by showing that defendants intentionally discriminated against a plaintiff based
17  on his membership in a protected class, *see Comm. Concerning Cmty. Improvement v. City*
18  *of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082
19  (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently
20  without a rational relationship to a legitimate state purpose.  *See Engquist v. Ore. Dep't of*
21  *Agr.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564
22  (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

23         Rapinoe alleges he suffers from a disability related to his "dual diagnosis [of]
24  addiction [and] mental health problems" and "other inmates in the SDSD facilities with the

---

[7] When a plaintiff sues a "Doe" defendant, the court provides the plaintiff "the opportunity through discovery to identify unknown defendants, unless it is clear that discovery would not uncover the identities."  *See Gillespie*, 629 F.2d at 642.  A plaintiff must diligently pursue discovery to learn the identity of unnamed defendants.  *See id.*

same or similar problems are receiving [MAT] treatment," while he is denied the treatment. (*See* Compl. at 10.) He states that only a "select few" detainees are provided MAT treatment and there is "no rational basis" to offer the program to these inmates and not Rapinoe. (*See id.*) He further alleges that "every other major city in California has adopted and implemented" programs similar to the MAT program and "there is no rational basis [for San Diego County] to deny "those seeking treatment for drug addictions." (*See id.* at 11.) He includes a declaration from a fellow detainee of the SDSD who states he has a history as a "narcotic user with mental health issues" and he is "currently on the MAT treatment program while housed in the custody of SDSD." (*See id.* at 17.)

"[T]he disabled do not constitute a suspect class" for equal protection purposes. *See Does v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440). Plaintiff has not shown that he was discriminated against because of his membership in any protected class. *See Hartmann v. Calif. Dep't of Corrs. & Rehab*, 707 F.3d 1114, 1123 (9th Cir. 2013). Nor has Plaintiff alleged sufficient facts to show he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. *See Engquist*, 553 U.S. at 601–02. Simply providing a declaration indicating another inmate in SDSD custody was admitted to the MAT program is insufficient to allege they are "similarly situated" or that there is no rational basis one inmate being accepted into the program and not Plaintiff. Rapinoe's conclusory statements that he was denied his requests for MAT drug treatment due to discrimination does not suffice. *See Iqbal*, 556 U.S. at 678. Therefore, he has failed to state an equal protection claim.

### C. Rehabilitation Act

Lastly, Rapinoe appears to argue that failure admit him to the MAT program while in SDSD custody violates his rights under the Rehabilitation Act ("RA"). He states that, "under the Rehabilitation Act, I am protected from discrimination based on disabilities to with [sic] mental health and drug addiction." (*See* Compl. at 9.) He contends that if SDSD

/ / /

"cannot provide [MAT treatment within San Diego County Jails,] it will need to provide access to outside treatment." (*See id.*)

To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). Here, Plaintiff alleges no facts to show that he was denied admission into the MAT program *because* of his disability. *See Duvall*, 260 F.3d at 1135. Rapinoe's conclusory statements that he was denied admission to the MAT program is insufficient to support a cause of action for a violation of the Rehabilitation Act. *See Iqbal*, 556 U.S. at 678 (holding that the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Moreover, he fails to allege that MAT program receives federal assistance. Plaintiff has therefore failed to state a claim under the RA. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

### D.   Leave to Amend

Based on the foregoing, the Court finds Plaintiff's Complaint fails to state any § 1983 claim upon which relief can be granted, and that it must be dismissed *sua sponte* and in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112. Because Rapinoe is proceeding pro se, however, the Court, having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). Consequently, in light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt sufficiently to allege § 1983 claims against Defendants. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it

/ / /

is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar*, 698 F.3d at 1212).

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a Motion for Appointment of Counsel.  (*See generally* ECF No. 3.)  He states that, "due to current COVID-19 restrictions all aspects of custodial life are effectively limited," including access to the law library, research materials and legal mail.  (*See id.* at 2.)

There is no constitutional right to counsel in a civil case.  *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant*, see Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *See id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *See Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).  That the pro se litigant would be better served with the assistance of counsel, does not necessarily qualify the issues involved as complex.  *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (stating it is not enough that plaintiff may well have fared better with assistance of counsel).

As currently pleaded, Plaintiff's Complaint fails to contain the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1).  *See Terrell*, 935 F.3d at 1017; *Palmer*, 560 F.3d at 970.  First, while Plaintiff may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims which are not legally "complex."  *See*
/ / /

*Agyeman*, 390 F.3d at 1103.  Furthermore, at this early stage of the litigation, the likelihood of plaintiff's success on the merits is unclear.

While the Court is sympathetic to the difficulties Plaintiff is likely experiencing due to the COVID-19 pandemic, minimal-to-no access to the law library does not establish exceptional circumstances.  Indeed, lacking legal expertise is the norm rather than an "exceptional circumstance" in pro se civil rights cases.  *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990) (denying appointment of counsel where plaintiff complained that he had limited access to law library and lacked a legal education). Moreover, courts in the Ninth Circuit have declined to find that challenges presented by the COVID-19 pandemic alone establish exceptional circumstances.  *See, e.g.*, *Pitts v. Washington*, No. 18-cv-0526-RSL-MLP, 2020 WL 2850564, at *1 (W.D. Wash. June 2, 2020) (denying motion for appointment of counsel because, "[a]lthough Plaintiff contends he is unable to access the law library because of social distancing, this bare assertion does not justify the appointment of counsel at this time, nor does the COVID-19 pandemic"); *Faultry v. Saechao*, No. 18-cv-1850-KJM-AC-P, 2020 WL 2561596, at *2 (E.D. Cal. May 19, 2020) (denying motion for appointment of counsel and explaining that "[c]ircumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances supporting appointment of counsel . . . .  The impacts of the COVID-19 health crisis on prison operations are also common to all prisoners"); *see also Raya v. Barka*, No. 3:19-cv-2295-WQH-AHG, 2020 WL 5877848, at *3 (S.D. Cal., Oct. 2, 2020) (noting that "courts in this circuit have declined to find that the COVID-19 pandemic establishes exceptional circumstances"); *Snowden v. Yule*, No. 2:17-cv-2167-TLN-AC-P, 2020 WL 2539229, at *1 (E.D. Cal., May 19, 2020) (stating that "limited access to the prison law library and resources, particularly during the current COVID-19 health crisis" is a circumstance that plaintiff shares with many other prisoners).

/ / /

/ / /

Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES WITHOUT PREJUDICE** Plaintiff's Counsel Motion (ECF No. 3). *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014).

## CONCLUSION

For the reasons explained above, the Court:

1.      **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Appointment of Counsel (ECF No. 3);

2.      **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

3.      **ORDERS** the Watch Commander of George Bailey Detention Facility, or their designee, to collect from Plaintiff's inmate trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2), with ALL PAYMENTS CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

4.      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Watch Commander, George Bailey Detention Facility, 446 Alta Road, San Diego, California 92158;

5.      **DISMISSES** this civil action *sua sponte* based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

6.      **GRANTS** Plaintiff <u>forty-five (45) days'</u> leave from the date of this Order in which to file an Amended Complaint that cures the deficiencies of pleading noted above. The Amended Complaint must be complete by itself without reference to his original pleading.  Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.   *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes

the original."); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  March 8, 2022

Honorable Todd W. Robinson
United States District Court